IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Chief Judge Philip A. Brimmer**

Civil Action No. 22-cv-00053-PAB

MICHAEL JOSEPH ROBERTS, SR.,

    Petitioner,

v.

SHERIFF ELIAS DIGGINS,
THE DENVER SHERIFF'S DEPARTMENT,

    Respondents.

## ORDER

This matter is before the Court on petitioner's Motion for Court to Determine Bond Issue Before Damages Trial and Counsels' Notice of Availability [Docket No. 11] filed pursuant to the Petition for Writ of Habeas Corpus and Order to Show Cause and Complaint for Injunctive Relief [Docket No. 1]. In his motion (the "bond motion"), petitioner asks the Court to "hear argument on the issue of bond prior to his civil damages trial, set for January 21, 2022." Docket No. 11 at 1. Respondents responded on January 18, 2022, Docket No. 13, and petitioner replied. Docket No. 14.

## I. BACKGROUND[1]

Petitioner states that his habeas petition arises out of a civil case filed in Colorado state court in 2015 by Richard Lang that includes cross-claims brought by

---

[1] These facts, taken from the Petition for Writ of Habeas Corpus and Order to Show Cause and Complaint for Injunctive Relief [Docket No. 1], are provided for background purposes only. The Court does not assume them to be true.

Timothy Flaherty, Timothy Kneen, Carl Verduca, and PdC, LLC, who petitioner refers to as the "cross-claimants." Docket No. 1 at 3, ¶ 9. The cross-claimants allege that petitioner "unlawfully secured a . . . lien on an investment property in . . . Mexico on behalf of a Mexican entity, Logistics Mexico Desarrollos Inmobiliarios y Publicitarios S.A. de C.V ("Logistics Mexico")." *Id.* According to petitioner, the cross-claimants seek damages relating to the lien and equitable relief "preventing [petitioner] or related Mexican entities from pursuing 'further litigation in the Mexico courts relating to the ownership or control of the [Mexico] property.'" *Id.* at 4, ¶ 10.

On January 24, 2019, Judge Kenneth Plotz preliminarily enjoined petitioner from taking assets from the property before a hearing on the merits of the parties' dispute. *Id.*, ¶ 11. Judge Plotz ordered petitioner to revoke or terminate any power of attorney to act on behalf of Riviera Country Club S. de R.L. de C.V. ("RCC"), a subsidiary of PdC, LLC ("PdC"), and to "advise the Mexican Courts in any proceeding affecting the title to" the property of the terms of the injunction. *Id.* at 3–4, ¶ 12; Docket No. 1-3 at 7.

On April 22, 2019, cross-claimants sought a contempt citation because petitioner allegedly violated Judge Plotz's injunction. Docket No. 1 at 5, ¶ 13. Another judge, Judge Eric M. Johnson, issued a show cause order in the case, ordering petitioner to appear at a contempt hearing on October 11, 2019. *Id.* Judge Johnson's order "indicated [that] the [c]ourt was contemplating charges of criminal/punitive contempt" against petitioner, but Judge Johnson ultimately declined to issue a contempt order. *Id.* Judge Johnson, however, "expanded" the injunction and ordered petitioner to "take affirmative steps regarding the Mexico Properties and the Mexican litigation." *Id.*, ¶ 14.

Judge Johnson ordered petitioner to "'transfer[], fully, to RCC any ownership interest in the disputed properties' including any interest held by Logistics Mexico," as well as to cease actions in Mexico inconsistent with RCC's ownership rights, cease all actions in Mexico for damages against RCC, and terminate the authority of various people to do any legal work on behalf of RCC. *Id.* at 5–6, ¶¶ 14–15.

Judge Marie Moses then took over the case and held a status conference. *Id.* at 6, ¶ 17. Judge Moses stated that "only civil/remedial contempt (not punitive/criminal) was at-issue in the case." *Id.* Judge Moses set a $200,000 appearance bond for petitioner, which he paid. *Id.* At a hearing on August 6, 2021, Judge Moses "advised [that the court] would determine issues of 'contempt and purging.'" *Id.* at 7, ¶ 18. Petitioner's counsel argued that the proceedings had turned punitive, rather than remedial, and sought the protections of a criminal defendant, which request was denied. *Id.*, ¶ 19. Petitioner attempted to "prov[e] . . . that [he] had 'purged his contempt,'" "had no contact with his former Mexican attorneys[,] and had ceased pursuing all actions in Mexico related to the property." *Id.*, ¶ 21.

Petitioner states that Judge Moses detained him after "finding [that] he had the ability to 'direct his attorneys to act consistently with the preliminary injunction and the Contempt Order' and had not done so as to 'purge his contempt.'" *Id.* at 7–8, ¶ 21. Judge Moses, according to petitioner, "ordered [him] to transfer fully all lien rights, in addition to ownership rights," to the cross-claimants. *Id.* At an August 18, 2021 hearing, petitioner "tendered to the court written revocations of the Powers of Attorney previously granted to counsel in Mexico and demonstrated that he'd hired new counsel

3

. . . to attempt to effectuate the Purge Order." *Id.* at 8, ¶ 22.  Judge Moses ordered petitioner released on a suspended sentence and required petitioner to surrender his passport, which he did.  *Id.*

At a September 3, 2021 hearing, Judge Moses "ordered [petitioner] to 'effectuat[e] assignment of foreclosure rights to RCC' and to 'comply with court's prior orders regarding dismissal of criminal cases in Mexico.'"  *Id.*, ¶ 23.  Petitioner attempted to appear virtually before a Mexican court to request dismissals of proceedings consistent with Judge Moses's contempt order, but was unsuccessful for reasons petitioner claims were beyond his control.  *Id.* at 9, ¶ 24.

On November 22, 2021, Judge Moses found that petitioner had not purged the contempt.  *Id.*, ¶ 26.  She detained petitioner and ordered him to "pay $1,000 to a Mexican notary and . . . effectuate transfer of the Logistics Mexico lien."  *Id.* at 10, ¶ 27.  Petitioner's Mexican lawyers, however, announced on January 3, 2022 that they were ceasing work on his case due to petitioner's inability to pay their fees, which petitioner claims is because Judge Johnson froze his assets.  *Id.*, ¶ 28.

On January 4, 2022, petitioner appeared before Judge Moses again but could not present evidence because, he claims, his Mexican lawyers had refused to work on his case.  *Id.*, ¶ 29.  Petitioner then learned that he had no interest in Logistics Mexico and therefore could not transfer the lien as the contempt order required.  *Id.* at 11, ¶ 30.  Judge Moses ordered petitioner to serve a term in jail not to exceed 166 days.  *Id.*, ¶ 31.  The commitment order states, "[o]n 1/04/2022, [petitioner] was found guilty of, or the court accepted the individual's plea of guilty or nolo contende to, the following

4

offenses: C.R.C.P. 107 (Contempt of Court)." Docket No. 1-18. Petitioner's case in state court is set for a hearing on January 21, 2022, which petitioner believes "will moot the Injunction Order which underlies all contempt proceedings in this case." Docket No. 1 at 12–13, ¶ 38.

Petitioner states that he has sought relief in state court as follows:

> a. Mr. Roberts promptly appealed from the August 2021 order imposing a six month prison sentence but the state court of appeals dismissed that appeal in September 2021 for supposed lack of jurisdiction in Case No. 2021CA1209.
>
> b. Mr. Roberts twice asked the Colorado Supreme Court to exercise discretionary review of the August 2021 contempt orders under C.A.R. 21, but that Court denied those requests in October 2021 in Case Nos. 2021SA248 and 2021SA295.
>
> c. Mr. Roberts has filed a third request for discretionary Colorado Supreme Court review through certiorari in Case No. 2021SC746, and added an emergency motion for release, but that certiorari petition and motion have not been acted upon.

*Id.* at 14, ¶ 42.

Petitioner has filed a petition for habeas corpus in this Court pursuant to 28 U.S.C. § 2241, *id.* at 3, ¶ 6, and brings three claims for relief under the Fourteenth Amendment for (1) "denial of due process right not to be detained unlawfully and to notice and opportunity to be heard," as petitioner alleges that he should have been given the "heightened procedural protections required under the Sixth and Fourteenth Amendments," *id.* at 14–15, ¶¶ 43–48; (2) "violation of procedural due process by denial of appellate rights," *id.* at 15, ¶¶ 49–52; (3) "state-created danger." *Id.* at 15–16, ¶¶ 53–57.

5

## II. ANALYSIS

Habeas corpus review is available under § 2241 if an individual is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). A § 2241 habeas proceeding is "an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *McIntosh v. U.S. Parole Comm'n*, 115 F.3d 809, 811 (10th Cir. 1997) (quoting *Preiser v. Rodriguez*, 411 U .S. 475, 484 (1973)).

The bond motion arises out of petitioner's habeas petition and seeks the same relief. Petitioner states that his contempt is for allegedly violating the terms of the injunction and that, once the state court rules on the damages issue on January 21, 2022, the injunction and petitioner's contempt sentence for violating the injunction will be moot because the injunction "underlies all contempt proceedings in this case." Docket No. 1 at 12–13, ¶ 38. In the bond motion, petitioner seeks "release[] on bond as soon as possible prior to" January 21, 2022. Docket No. 11 at 2. The relief that petitioner requests in the bond motion is identical to the relief requested in the underlying petition itself, namely, release before January 21, 2022. Because the bond motion requests interim relief, the Court considers the bond motion first and then the habeas petition.

Colorado's contempt rule, Colorado Rule of Civil Procedure 107, does not provide for interim relief through release on bond in petitioner's circumstance. "There are two types of contempt – direct and indirect – and two types of sanctions – remedial and punitive." *In re A.C.B.*, 2022 COA 3, ¶ 21 (citation omitted). The distinction

between direct and indirect contempt "lies in the location of the contumacious act." *Id.*, ¶ 22. "Direct contempt takes place in the court's presence before a judge who has personal knowledge of the act, while indirect contempt doesn't." *Id.* (citing Colo. R. Civ. P. 107(a)(2)–(3); *People ex rel. State Eng'r v. Sease*, 2018 CO 91, ¶ 22).

"Punitive sanctions remain criminal in nature because they're intended to punish." *Id.*, ¶ 23 (citing Colo. R. Civ. P. 107(a)(4) (defining "Punitive Sanctions for Contempt" as "[p]unishment by unconditional fine, fixed sentence of imprisonment, or both, for conduct that is found to be offensive to the authority and dignity of the court")). "Punitive sanctions must be supported by findings of fact that establish beyond a reasonable doubt that: (1) a lawful order existed; (2) the contemnor had knowledge of the order; (3) the contemnor had the ability to comply with the order; and (4) the contemnor willfully refused to comply with the order." *Id.* (quoting *Sease*, ¶ 23 (citation omitted)). "Remedial sanctions continue to be civil in nature as they're 'imposed to force compliance with a lawful order or to compel performance of an act within the person's power or present ability to perform.'" *Id.*, ¶ 24 (citing Colo. R. Civ. P. 107(a)(5)). "Remedial sanctions must be supported by findings of fact establishing that the contemnor (1) failed to comply with a lawful court order; (2) knew of the order; and (3) has the present ability to comply with the order." *Id.* (citing *In re Marriage of Dean*, 2017 COA 51, ¶ 7). "If the trial court finds that the contemnor has the present ability to comply – and thereby purge the contempt – it may impose an indefinite term of imprisonment until the contemnor performs the acts necessary to purge the contempt." *Id.* (citing Colo. R. Civ. P. 107(d)(2); *In re Estate of Elliott*, 993 P.2d 474, 478 (Colo.

2000)). "Thus, a remedial sanction of imprisonment is always conditional." *Id.*

The only mention of bond in Rule 107 is the provision that, in the case of indirect contempt, i.e., contempt that does not occur in the "court's presence before a judge who has personal knowledge of the act," *A.C.B.*, ¶ 21, a warrant for the contemnor's arrest may issue, which shall state

> the amount and kind of bond required. The person shall be discharged upon delivery to and approval by the sheriff or clerk of the bond directing the person to appear at the date, time and place designated in the warrant, and at any time to which the hearing may be continued, or pay the sum specified. If the person fails to appear at the time designated in the warrant, or at any time to which the hearing may be continued, the bond may be forfeited upon proper notice of hearing to the surety, if any, and to the extent of the damages suffered because of the contempt, the bond may be paid to the aggrieved party. If the person fails to make bond, the sheriff shall keep the person in custody subject to the order of the court.

Colo. R. Civ. P. 107(c). The rule makes clear that bond is to be used to ensure that the alleged contemnor attends the contempt hearing. Here, the contempt hearing occurred on January 4, so there is no need for bond to ensure petitioner attends a contempt hearing, and the bond motion provides no authority for a federal court to release on bond an individual detained pursuant to a remedial contempt order.

Moreover, release on bond would not be appropriate for someone found to be in indirect contempt and serving the remedial sanction of imprisonment.[2] Because a

---

[2] Petitioner contends in his filings that his sanction is punitive, not remedial, because the commitment order includes the word "guilty" and mentions a plea and he cannot purge his contempt. Petitioner's argument is not convincing. First, the difference between remedial and punitive contempt is not whether the commitment order uses the word "guilty," but whether the sanction is intended to punish or to ensure compliance. Second, both punitive and remedial sanctions have as an element the contemnor's ability to comply with the lawful order that the court finds the contemnor disobeyed. *Compare Sease*, ¶ 23 (holding that punitive sanctions must be supported

8

remedial sanction is always conditional, as the contemnor has the ability to comply with the court order that was violated, and thereby holds the proverbial keys to the jailhouse door, *see Hicks v. Feiock*, 485 U.S. 624, 633 (1988), he can secure his own release and does not need the Court's intervention.

Finally, the Court notes that its power to release a state prisoner on bond pending a decision on a habeas petition requires "a showing of exceptional circumstances . . . for such relief, or a demonstration of a clear case on the merits of the habeas petition." *Pfaff v. Wells*, 648 F.2d 689, 693 (10th Cir. 1981). The Tenth Circuit has held that a petitioner must show both exceptional circumstances and a clear case on the merits. *See, e.g.*, *United States v. Zander*, 669 F. App'x 955, 956 (10th Cir. 2016) (unpublished) ("Mr. Zander asserts that he has shown exceptional circumstances justifying his release because the case files and legal materials he needs to pursue his rights under § 2255 have allegedly been seized and lost by the Bureau of Prisons. Even if these allegations are true, Mr. Zander has not shown this situation constitutes an exceptional circumstance justifying his release."). This "standard reflects the recognition that a preliminary grant of bail is an exceptional form of relief in a habeas corpus proceeding." *Landano v. Rafferty*, 970 F.2d 1230, 1239 (3d Cir. 1992) (citation omitted). As such, "[v]ery few cases have presented extraordinary circumstances." *Id.*

Courts in this District have held that "the standard for consider[ing] the bond issue requires that [the court] consider the merits of [the] habeas motion" in order to

---

by a finding that the "contemnor had the ability to comply with the order") *with Dean*, ¶ 7 (noting, for remedial contempt, that the contemnor must "ha[ve] the present ability to comply with the order"). Moreover, imprisonment may be imposed for remedial contempt.

determine whether the petitioner has shown a clear case on the merits. *See Martinez v. United States*, No. 04-cv-01510-WDM, 2005 WL 1847152, at *1 (D. Colo. 2005). The Court will consider the habeas petition below; however, regardless of whether petitioner has raised substantial constitutional claims in his habeas petition on which he has a high probability of success, petitioner has not identified extraordinary or exceptional circumstances that entitle him to the relief that he requests. The only justification for release mentioned in his bond motion is his statement that "it is imperative that [he] be released on bond as soon as possible prior to" January 21, 2022 "[t]o try and meaningfully prepare for this trial with his civil counsel." Docket No. 11 at 2. Petitioner, however, has not explained why his attorneys cannot prepare for the damages trial even though petitioner is in custody, which is common in criminal hearings and trials. In another filing, titled "Emergency Motion to Stay Habeas Petitioner's State Custody Sentence and Order for Immediate Release on Bond Pending Determination of His Petition for Writ of Habeas Corpus," Docket No. 2, petitioner claims extraordinary circumstances are present because he is a "*civil* detainee who has never been adjudged guilty beyond a reasonable doubt by a judge or jury prior to his detention," but has been "ordered incarcerated indefinitely . . . under the guise of a civil/remedial contempt proceeding." *Id.* at 5 (citation and quotation omitted). It is not clear how this is an extraordinary or exceptional circumstance. Petitioner's detention is also not extraordinary, as Colorado courts recognize that imprisonment may be a remedial sanction, *see, e.g.*, *A.C.B.*, ¶ 24, and many defendants prepare for trial while incarcerated. The Tenth Circuit has also held that "various health problems, . . . significant delay in the district court [] . . . , and [being] on the verge of being

transferred from prison to a halfway house" do not "constitute exceptional circumstances." *United States v. Palermo*, 191 F. App'x 812, 813 (10th Cir. 2006) (unpublished); *see also Stow v. Perrill*, 30 F.3d 142, 1994 WL 377629, at *1 (10th Cir. July 20, 1994) (unpublished table decision) (finding petitioner's "contention that he has served his full sentence is not enough to demonstrate special circumstances" for release pending habeas review).[3] Petitioner, therefore, has not shown that he is entitled to release on bond pending habeas review because he has not shown exceptional circumstances for such relief. *See Pfaff*, 648 F.2d at 693; *Zander*, 669 F. App'x at 956. The Court will therefore deny the bond motion.

Even if the Court views the requirements for release on bond pending habeas review in the disjunctive, as opposed to the conjunctive, *see Pfaff*, 648 F.2d at 693 (requiring a petitioner to make "a showing of exceptional circumstances . . . for such relief, or a demonstration of a clear case on the merits of the habeas petition."), petitioner has not shown a "clear case on the merits of the habeas petition." *See id.*

Petitioner claims that he "need not exhaust administrative remedies." Docket No. 1 at 13, ¶ 40. Petitioner is mistaken. In fact, the Tenth Circuit recently held that, "[t]o obtain relief under § 2241, a state prisoner must first exhaust all available

---

[3] Respondents construe petitioner as requesting "relief in the form of a preliminary injunction." Docket No. 13 at 8–17. Regardless of how petitioner's requested relief is characterized, the result would be the same. To obtain a preliminary injunction, a plaintiff must demonstrate four factors by a preponderance of the evidence: (1) a likelihood of success on the merits; (2) a likelihood that the movant will suffer irreparable harm in the absence of preliminary relief; (3) that the balance of equities tips in the movant's favor; and (4) that the injunction is in the public interest. *RoDa Drilling Co. v. Siegal*, 552 F.3d 1203, 1208 (10th Cir. 2009). Because petitioner has not demonstrated that he has exhausted his state-court remedies, he is unlikely to succeed on the merits of his habeas petition.

state-court remedies." *Melnick v. Polis*, 2021 WL 5701503, at *1 (10th Cir. Dec. 1, 2021). Although § 2241 does not contain an explicit exhaustion requirement, a petitioner must exhaust available administrative and state-court remedies before bringing a habeas petition. *See Medina v. Williams*, 823 F. App'x 674, 676 (10th Cir. 2020) (unpublished) (citing *Magar v. Parker*, 490 F.3d 816, 818 (10th Cir. 2007) (requiring exhaustion for § 2241 claim)); *Garza v. Davis*, 596 F.3d 1198, 1203 (10th Cir. 2010); *Wilson v. Jones*, 430 F.3d 1113, 1117 (10th Cir. 2005). A habeas petitioner bringing claims under § 2241 bears the burden of demonstrating that he has exhausted available remedies. *Hamm v. Saffle*, 300 F.3d 1213, 1216 (10th Cir. 2002); *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000); *Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992). The Tenth Circuit has admonished that, although the exhaustion requirement is not jurisdictional, *Demarest v. Price*, 130 F.3d 922, 933 (10th Cir. 1997), it "is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).

Exhaustion requires a petitioner to have "first fairly presented the substance of his federal habeas claim to state courts." *Hawkins v. Mullin*, 291 F.3d 658, 668 (10th Cir. 2002); *Picard v. Connor*, 404 U.S. 270, 278 (1971) ("Fair presentation" requires that the "substance of a federal habeas corpus claim" must have been presented to the state courts.). The exhaustion requirement is satisfied if the petitioner presents his claim through one "complete round of the State's established appellate review process." *Woodford v. Ngo*, 548 U.S. 81, 92 (2006) ("In practical terms, the law of habeas, like administrative law, requires proper exhaustion, and we have described this feature of

habeas law as follows: 'To . . . protect the integrity of the federal exhaustion rule, we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies.'" (quoting *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999)); *see also Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) ("The exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." (citing *Rose v. Lundy*, 455 U.S. 509, 518 (1982)).

"Fair presentation" requires that the specific federal claim be presented in state court. Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (citation omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam). A claim must be presented as a federal constitutional claim in the state-court proceedings in order to be exhausted. *See Duncan v. Henry*, 513 U.S. 364, 365–66 (1995) (per curiam). If a petitioner asserts "different arguments in [his] federal habeas proceedings" than he asserted in state court, he will not have "fairly presented the substance of his federal habeas claim." *Hawkins*, 291 F.3d at 669 ("The fact that Hawkins asserted some ineffective-assistance claims in state court, therefore, will not suffice to exhaust this significantly different federal habeas claim challenging counsel's failure to conduct an adequate investigation or to advise Hawkins properly." (citing *Picard*, 404 U.S. at 276–77 (habeas petitioner failed fairly to present federal claim to state court where, despite presenting all necessary facts, petitioner failed to assert specific argument that

13

he later tried to raise in federal court)); *Thomas v. Gibson*, 218 F.3d 1213, 1221 n.6 (10th Cir. 2000) (petitioner's general state-court ineffective-assistance claim was insufficient to exhaust his later, more specific federal habeas claim); *Smallwood v. Gibson*, 191 F.3d 1257, 1267 (10th Cir. 1999) (petitioner had failed to exhaust state remedies where basis of petitioner's state-court ineffective-assistance claim was different than that of his federal ineffective-assistance claim).

The Tenth Circuit notes that, "in addition to providing state courts the initial opportunity to address a criminal defendant's federal claims," *Hawkins*, 291 F.3d at 669 (citing *Williams v. Taylor*, 529 U.S. 420, 437 (2000)), "the exhaustion requirement also insures that a federal habeas claim will be accompanied by a complete factual record." *Id.* (citing *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (pre-AEDPA)). Thus, a federal habeas petitioner has not fairly presented his federal claim in state court, and thereby has not met the exhaustion requirement, if the petitioner has not "sought to develop . . . the factual basis necessary to resolve his current claim." *Id.* at 669–70.

Failure to exhaust may be excused if "there is an absence of available State corrective process . . . or . . . circumstances exist that render such process ineffective to protect the rights of the applicant." 28 U.S.C. § 2254(b)(1)(B)(i), (ii). In other words, exhaustion is required unless there is "no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to render futile any effort to obtain relief." *Beavers v. Saffle*, 216 F.3d 918, 924 n.3 (10th Cir. 2000) (quoting *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (per curiam)). The Court "will not excuse a failure to exhaust state remedies unless it is affirmatively shown that resort to them would be

useless." *Crank v. Jenks*, 224 F. App'x 838, 839 (10th Cir. 2007) (unpublished) (citing *Clonce v. Presley*, 640 F.2d 271, 273 (10th Cir. 1981)); *Garza*, 596 F.3d at 1203 ("A narrow exception to the exhaustion requirement applies if a petitioner can demonstrate that exhaustion is futile."). The Tenth Circuit has held that "exhaustion of state remedies is not required where the state's highest court has recently decided the precise legal issue that petitioner seeks to raise on his federal habeas petition. In such a case, resort to state judicial remedies would be futile." *Goodwin v. Oklahoma*, 923 F.2d 156, 157 (10th Cir. 1991).

Petitioner has not met his burden of establishing that he has exhausted his habeas claims. *See Hamm*, 300 F.3d at 1216. First, petitioner states that he appealed from the August 2021 contempt order, but the "state court of appeals dismissed that appeal in September 2021 for supposed lack of jurisdiction in Case No. 2021CA1209." Docket No. 1 at 14, ¶ 42. Petitioner has not established that he presented his claim through one "complete round of the State's established appellate review process," as there is no indication that petitioner appealed the Colorado Court of Appeals's dismissal. *See Woodford*, 548 U.S. at 92. He also has not provided any indication that he presented the same arguments in his appeal in Case No. 2021CA1209 as in this habeas petition. Moreover, he has not shown that he presented the same facts to the Colorado Court of Appeals that he provides here and has not shown how his first-level appeal of the August 2021 contempt order could constitute exhaustion of the January 2022 contempt order, issued months later. The Supreme Court in *Anderson* held that "[i]t is not enough that all the facts necessary to support the federal claim were before

the state courts." 459 U.S. at 6. If it is not sufficient for a petitioner to present the same facts to the state court on appeal as to the federal court on habeas review, it necessarily cannot be sufficient to present an incomplete factual record to the state court where, as here, the Colorado Court of Appeals could not have considered the events between August 2021 and January 2022. Therefore, petitioner has not "sought to develop . . . the factual basis necessary to resolve his current claim" and has not fairly presented it, see Hawkins, 291 F.3d at 669–70, where his petition is based on a different contempt and commitment order than was the subject of his appeal. Petitioner's lack of supporting detail in his habeas petition precludes his provision to this Court of a "complete factual record" of his state-court proceedings. Id. at 669.

Petitioner states that he "twice asked the Colorado Supreme Court to exercise discretionary review of the August 2021 contempt orders" pursuant to Colo. App. R. 21. Docket No. 1 at 14, ¶ 42. Again, petitioner has provided no detail about these requests and has not established that they were based on the same arguments as in his habeas petition. Nor could August 2021 reviews have included details or arguments about Judge Moses's commitment order, which was issued months later, or the allegedly constitutionally infirm proceedings in January 2022.

Regardless, petitioner's requests to the Colorado Supreme Court for discretionary review are insufficient to exhaust his claims. If a "claim has been presented [to the state's highest court] for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons therefor, . . . [r]aising the claim in such a fashion does not, for the relevant purpose, constitute 'fair presentation.'" Castille, 489 U.S. at 351; see also Parkhurst v. Shillinger,

16

128 F.3d 1366, 1369 (10th Cir. 1997) (state procedure that is discretionary and limited in scope does not constitute fair presentation).  Under Colorado law, "[r]elief under [Rule 21] is extraordinary in nature and is a matter wholly within the discretion of the supreme court."  Colo. App. R. 21(a)(1); *see also Rogers v. Best*, 171 P.2d 769, 770 (Colo. 1946).  Relief under Rule 21 "will be granted only when no other adequate remedy, including relief available by appeal or under C.R.C.P. 106, is available."  Colo. App. R. 21(a)(1).  Furthermore, "the denial of an original petition for an extraordinary writ by the Colorado Supreme Court does not indicate that the court has considered the merits of the argument."  *Tamariz v. Mink*, No. 10-cv-01737-PAB-BNB, 2010 WL 3715145, at *2 (D. Colo. Sept. 14, 2010) (citing *Bell v. Simpson*, 918 P.2d 1123, 1125 n.3 (Colo. 1996)).  Accordingly, "filing a petition the Colorado Supreme Court, in its discretion, may deny is not sufficient to exhaust state court remedies."  *Id.* (citing *Allen v. Zavaras*, 568 F.3d 1197, 1202–03 (10th Cir. 2009)).  The Tenth Circuit has reaffirmed that a Rule 21(a)(1) "petition asking the Colorado Supreme Court to exercise its original jurisdiction 'is not a substitute for appeal'" and is insufficient to show exhaustion.  *Melnick*, 2021 WL 5701503, at *2 (quoting *Bell v. Simpson*, 918 P.2d 1123, 1125 n.3 (Colo. 1996)).

       Finally, petitioner states that he "filed a third request for discretionary Colorado Supreme Court review through certiorari in Case No. 2021SC746, and added an emergency motion for release, but that petition and motion have not been acted upon."  Docket No. 1 at 14, ¶ 42.  As with petitioner's reference to his other appeals, petitioner provides no detail on the substance of his certiorari petition and whether his claims and

arguments to the Colorado Supreme Court are the same as in his habeas petition to this Court, and he has not explained how a 2021 appeal could constitute sufficient factual development "necessary to resolve his current claim," which concerns a January 2022 order. *Hawkins*, 291 F.3d at 669–70. Petitioner also provides no detail on his "emergency motion for release," although he has indicated that it was denied on January 10. *See* Docket No. 8 at 2. The fact that an "emergency motion for release" was denied, even if it contained all of the same claims and arguments, does not indicate that petitioner proceeded through one "complete round of the State's established appellate review process." *See Woodford*, 548 U.S. at 92. Petitioner has not stated that he appealed the January 2022 order to the Colorado Supreme Court. Instead, it appears that petitioner appealed orders from 2021 and filed a separate motion regarding his January 2022 commitment order, bypassing the Colorado Court of Appeals.

Because petitioner has not demonstrated that he has exhausted his state-court remedies, which is his burden, *see Hamm*, 300 F.3d at 1216, or that an exception to the exhaustion requirement applies, he has not established that he is entitled to the relief that he seeks. Petitioner argues that exhaustion is or should be excused because he "may suffer irreparable harm if unable to secure immediate judicial consideration of his claim." Docket No. 1 at 13, ¶ 41 (quoting *McCarthy v. Madigan*, 503 U.S. 140, 144 (1992)). *McCarthy*, however, is not a habeas case and is therefore inapposite. The Tenth Circuit has held that exhaustion is required unless there is "no opportunity to obtain redress in state court or if the corrective process is so clearly deficient as to

render futile any effort to obtain relief." *Beavers*, 216 F.3d at 924 n.3; *Crank*, 224 F. App'x at 839. Petitioner does not argue that the appeal process is deficient or would be futile, and the Court does not find that exhaustion may be excused.

In *Tamariz*, the Court considered the exhaustion requirement for a habeas petition filed by an individual detained pursuant to a Colo. R. Civ. P. 107 contempt order. The Court found that there was no authority for the position that the "standard for exhaustion of state court remedies in a habeas case involving incarceration for remedial contempt is different from the standard for exhaustion in a habeas case involving incarceration after a criminal conviction." *Tamariz*, 2010 WL 3715145, at *3. The Court noted that at least one other court in the District "applied the standard of exhaustion under 28 U.S.C. § 2254(b)(1) to a case involving an incarceration for remedial contempt." *Id.* (citing *Chipman v. Alderman*, No. 09-cv-01137-ZLW-BNB, 2009 WL 2365411, at *2 (D. Colo. July 31, 2009)). Moreover, the Court found no extraordinary circumstances that justified waiving the exhaustion requirement. The Court in this case will not depart from the exhaustion requirement, which "is not one to be overlooked lightly." *Hernandez*, 69 F.3d at 1092.

Because petitioner has not exhausted his habeas claims – or shown why exhaustion should be excused – his requests for the Court to consider his petition or to afford him the relief that he seeks, namely, release before his January 21, 2022 damages hearing, are premature. The Court will therefore dismiss the habeas petition.

### III. CONCLUSION

For the foregoing reasons, it is

**ORDERED** that petitioner's Motion for Court to Determine Bond Issue Before Damages Trial and Counsels' Notice of Availability [Docket No. 11] is **DENIED**.  It is further

**ORDERED** that the Petition for Writ of Habeas Corpus and Order to Show Cause and Complaint for Injunctive Relief [Docket No. 1] is **DENIED** and this action is **DISMISSED without prejudice**.[4]  It is further

**ORDERED** that petitioner's Emergency Motion to Stay Habeas Petitioner's State Custody Sentence and Order for Immediate Release on Bond Pending Determination of his Petition for Writ of Habeas Corpus [Docket No. 2] is **DENIED as moot**.  It is further

**ORDERED** that petitioner's Motion to Supplement Petition for Writ of Habeas Corpus with Verification [Docket No. 7] is **DENIED as moot**.  It is further

**ORDERED** that petitioner's Forthwith Motion to Request Emergency Hearing [Docket No. 8] is **DENIED as moot**.  It is further

**ORDERED** that this case is closed.

DATED January 20, 2022.

BY THE COURT:

PHILIP A. BRIMMER
Chief United States District Judge

---

[4] Courts dismiss habeas petitions without prejudice where the "petitioner's failure to exhaust is clear from the face of the petition," *Allen*, 568 F.3d at 1201, and no exception to the exhaustion rule applies. *Kilgore v. Atty. Gen. of Colo.*, 519 F.3d 1084, 1089 (10th Cir. 2008) (clarifying that *sua sponte* dismissal is permitted where the procedural defect is "clear from the face of the petition itself").